# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**CARA SCHAEFER WIENEKE**
Special Assistant to the
State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,                    )
                                     )
    Appellant-Plaintiff,         )
                                     )
            vs.      )    No.  62A01-1403-CR-116
                                     )
JACOB A. WROE,                       )
                                     )
    Appellee-Defendant.          )

APPEAL FROM THE PERRY CIRCUIT COURT
The Honorable Karen A. Werner, Magistrate
Cause No. 62C01-1309-FC-575

**September 9, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

The State of Indiana appeals the trial court's order granting Jacob Wroe's motion to suppress all evidence related to a polygraph examination Wroe had taken, including the stipulation to its admissibility signed by Wroe and the State. Although we acknowledge the concerns raised by Wroe regarding the agreement that he signed, and have significant reservations about the reliability of polygraph examinations and their admissibility in court, we are compelled by precedent to reverse the trial court's order.

FACTS

In July 2013, the Department of Child Services (DCS) received a report that three-year-old I.B., Wroe's niece, had disclosed that Wroe had touched her vaginal area in late June 2013. DCS informed the Tell City Police Department, which opened an investigation. On July 19, 2013, Lieutenant Detective Alan Malone conducted a forensic interview of I.B., who repeated the allegations regarding Wroe.

On July 29, 2013, Wroe voluntarily met with Lieutenant Malone at the police station. During that meeting, Wroe volunteered to take a polygraph test regarding I.B.'s accusations. In a prior criminal case against him, Wroe had taken and passed a polygraph test, resulting in the dismissal of all charges against him.

On July 31, 2013, Wroe returned to the police department for the polygraph examination. Police Chief Gregory Hendershot met with Wroe to go over the stipulation and agreement (the "Stipulation") to be signed before the polygraph. Chief Hendershot read the document to Wroe out loud, as well as making it available for Wroe to read. Among other things, Chief Hendershot asked Wroe if he understood the terms of the

2

Stipulation. Wroe stated that he did understand the document and then signed it. The prosecuting attorney's signature also appears on the document.[1] In pertinent part, the Stipulation provides as follows:

1. Jacob A. Wroe requests to take a polygraph examination.

2. Jacob A. Wroe understands that [he] has the right to remain silent and anything [he] says can and will be used against [him] in a [c]ourt of law.

3. Jacob A. Wroe understands that [he] has the right to an attorney and that if [he] cannot afford an attorney, the Court would appoint one for [him].

***

5. Jacob A. Wroe voluntarily agrees to take a polygraph examination to be administered by a polygraph examiner of the Indiana State police.

***

7. Jacob A. Wroe voluntarily waives the constitutional privilege against self-incrimination . . . .

***

9. The examiner is acknowledged to be a qualified polygraph examiner and an expert . . . .

10. The examiner will be recognized as an expert witness . . . .

11. The questions of the examiner, the answers of Jacob A. Wroe, the record of Jacob A. Wroe's reactions, any statements made by Jacob A. Wroe, and anything else relating to the examination including the results and the opinions of the examiner shall be admitted at any trial or hearing as evidence either on behalf of Jacob A. Wroe or the State of Indiana. The opposing party hereby expressly waives any and all objections to such testimony as to the competency, weight, relevancy, remoteness, or admissibility of such testimony based upon public, legal, judicial, social

---

[1] It is unclear whether the prosecuting attorney signed the Stipulation before or after Wroe.

policy, due process of law, and/or such rules of evidence as might otherwise govern.

***

20.     Jacob A. Wroe acknowledges that the results of the polygraph examination would not be admissible but for this signed Stipulation and Agreement.   Upon signing this Stipulation and Agreement, Jacob A. Wroe further acknowledges that he is waiving his Fifth Amendment right against self-incrimination and that [he] is waiving [his] right to counsel.

21.     If the examiner's final opinion indicates that Jacob A. Wroe is not guilty of any charges, the State of Indiana will cease to investigate Jacob A. Wroe as a suspect in this investigation . . . .

Tr. Ex. A p. 1-4.

On September 19, 2013, the State charged Wroe with one count of Class C felony child molesting.  On January 16, 2014, Wroe filed a motion to suppress the Stipulation, the polygraph examination, and all other evidence related to the polygraph.  Following a February 11, 2014, hearing on the motion, the trial court summarily granted it on February 19, 2014.  On February 21, 2014, the State filed a motion to dismiss the charge, which the trial court granted on the same day.  The State now appeals.

DISCUSSION AND DECISION

I.  Cross-Appeal: Timeliness

As a preliminary issue, Wroe cross-appeals, arguing that this appeal is untimely brought.  Indiana Code section 35-38-4-2 provides that the State may appeal the grant of a motion to suppress only where the "ultimate effect of the order is to preclude further prosecution."  Wroe notes that the uncorroborated testimony of a victim, without more, may be sufficient to obtain and uphold a child molesting conviction.  E.g., Deaton v.

4

State, 999 N.E.2d 452, 456 (Ind. Ct. App. 2013). Therefore, Wroe contends that I.B.'s testimony in this case would have been sufficient to obtain a conviction and, as a result, the grant of the motion to suppress did not preclude further prosecution.

We cannot agree. It is not the role of this Court "to review the evidence available to the State and make an independent determination whether prosecution is possible without the suppressed evidence." State v. Aynes, 715 N.E.2d 945, 948 (Ind. Ct. App. 1999). The strategic decision of whether to pursue a prosecution belongs to the attorneys representing the State, and it is not within our purview to second-guess that determination. Therefore, this argument is unavailing, and we proceed to consider the issue raised by the State in its appeal.

## II. Motion to Suppress

The State argues that the trial court erroneously granted Wroe's motion to suppress. When reviewing the grant of a motion to suppress evidence, we must determine whether the record contains substantial evidence of probative value supporting the trial court's decision. State v. Vanderkolk, 10 N.E.3d 585, 592 (Ind. Ct. App. 2014). We will not reweigh the evidence, and because the State appeals from a negative judgment, it must show that the trial court's decision to suppress the evidence was contrary to law. Id.

As a general matter, Indiana courts look with disfavor on the admission of polygraph examinations into evidence in criminal proceedings. Consequently, our

5

Supreme Court has held that polygraphs are admissible only when four prerequisites are met:

(1) the prosecutor, defendant, and defense counsel must all sign a written stipulation providing for the defendant's submission to the examination and for the subsequent admission at trial of the results;

(2) the admissibility of the test results must be within the trial court's discretion as it relates to the examiner's qualifications and the test conditions;

(3) the opposing party must have the right to cross-examine the polygraph examiner if his graphs and opinion are offered in evidence; and

(4) the jury must be instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given such testimony.

Sanchez v. State, 675 N.E.2d 306, 308 (Ind. 1996). In the instant case, the parties agree that because the issue was decided by a pretrial motion to suppress, the only Sanchez requirement at issue herein is the first one. A stipulation entered into by a defendant and the State before a polygraph examination is a binding contract. Willey v. State, 712 N.E.2d 434, 440 (Ind. 1999). Therefore, contract law principles control the use and interpretation of such stipulations. Id.

The trial court did not enter findings of fact or conclusions of law in granting Wroe's motion to suppress; as a result, we are uncertain on what basis the motion was granted. Moreover, Wroe's motion did not spell out the reasoning or legal theories underlying his request. On appeal, the State points to three reasons the trial court may

6

have granted the motion, and Wroe makes only one substantive argument in favor of his position. We will address each of these in turn.

## A. No Attorney Present

First, the State argues that to the extent the trial court may have found that the Stipulation was invalid because Wroe signed it without an attorney present, the trial court erred. Initially, we note that it does not appear that Wroe argued to the trial court that the Stipulation should be invalid merely because he was not represented by counsel when he signed it.

There are three potential sources of a criminal defendant's right to representation by counsel: the Fifth and Sixth Amendments to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. The Fifth Amendment protects against compelled self-incrimination. Davis v. United States, 512 U.S. 452, 457 (1994). The right to counsel on this basis is merely a procedural safeguard to protect a person subject to custodial interrogation. Id. Here, Wroe was neither in custody nor subject to interrogation at the time he decided to sign the Stipulation, nor does he make that argument on appeal. As a result, we do not find that he had a right to counsel under the Fifth Amendment.

The Sixth Amendment right to counsel does not attach until the initiation of criminal proceedings against the defendant through the filing of criminal charges. Dullen v. State, 721 N.E.2d 241, 242 (Ind. 1999) (holding that "[o]nce charges are filed against a defendant, the Sixth Amendment guarantee of assistance of counsel applies to 'critical'

7

stages of the proceedings") (emphasis added). In this case, no criminal charges had been filed against Wroe at the time he signed the Stipulation. As a result, he did not have a right to counsel under the Sixth Amendment.

Finally, the right to counsel afforded by the Indiana Constitution may attach before the formal initiation of criminal proceedings under certain circumstances. Malinski v. State, 794 N.E.2d 1071, 1078-79 (Ind. 2003). This Court has had multiple occasions to consider whether the right to counsel had attached to an individual signing a stipulation regarding a polygraph examination. In Kochersperger v. State, 725 N.E.2d 918, 922-24 (Ind. Ct. App. 2000), this Court held that whether the defendant had a right to counsel depended on whether the stipulation was signed before or after he was arrested, arraigned, or indicted. If a defendant signs a stipulation, submits to the polygraph examination, and participates in a post-polygraph interrogation before he is arrested, arraigned, or indicted, his right to counsel has not yet attached. Id. at 924; see also Callis v. State, 684 N.E.2d 233, 237-38 (Ind. Ct. App. 1997).

We note, however, that this Court has reached slightly different conclusions in two other cases. In Casada v. State, 544 N.E.2d 189, 197-99 (Ind. Ct. App. 1989), while the Court agreed that the right to counsel had not attached at the time the defendant signed the stipulation because he had not been arrested, arraigned, or indicted, it also held that the right to counsel does exist during the polygraph examination and post-examination interrogation. And in Caraway v. State, 891 N.E.2d 122, 124-27 (Ind. Ct. App. 2008), this Court held that the right to counsel attached immediately before a police officer

8

asked the defendant to sign the stipulation even though the defendant was not in custody and no charges had been filed. Without expressing opinion on the results reached by these two panels, we note that the instant case is distinguishable from both. In this case, Wroe <u>was</u> advised as follows:

> 2. Jacob A. Wroe understands that [he] has the right to remain silent and anything [he] says can and will be used against [him] in a [c]ourt of law.
>
> 3. Jacob A. Wroe understands that [he] has the right to an attorney and that if [he] cannot afford an attorney, the Court would appoint one for [him].

Tr. Ex. A p. 1. After being informed of those rights, Wroe then waived them:

> 7. Jacob A. Wroe voluntarily waives the constitutional privilege against self-incrimination and agrees to talk freely with the examiner and will answer truthfully all questions asked by the examiner.
>
> ***
>
> 20. . . . Upon signing this Stipulation and Agreement, Jacob A. Wroe further acknowledges that [he] is waiving [his] Fifth Amendment right against self-incrimination and that [he] is waiving [his] right to counsel.

<u>Id.</u> at p. 4. Wroe did not argue to the trial court, and does not argue on appeal, that his waiver was unknowing or involuntary. Therefore, even if we were to accept purely for argument's sake the proposition that a right to counsel had attached before he signed the Stipulation and/or before he underwent the polygraph examination, we would find that he waived that right knowingly and voluntarily. As a result, we do not find the Stipulation invalid on this basis.

9

### B. Ambiguity of Stipulation

Next, the State notes that the trial court may have found that the Stipulation was ambiguous. First, the trial court may have found the Stipulation ambiguous because it does not explicitly state that the trial court would retain some discretion regarding the admissibility of the polygraph examination. See Sanchez, 675 N.E.2d at 308 (holding that the admissibility of the test results must be within the trial court's discretion as it relates to the examiner's qualifications and the test conditions). While it is true that the Stipulation does not explicitly state that the trial court would retain discretion regarding the admissibility of the polygraph, our Supreme Court has held that a stipulation is not required to make an explicit statement in this regard. Jackson v. State, 735 N.E.2d 1146, 1152-53 (Ind. 2000) (rejecting claim that stipulation was defective because it did not state the second or third prerequisites for admission from Sanchez); Davidson v. State, 558 N.E. 2d 1077, 1086 (Ind. 1990) (holding that stipulation need not state second, third, and fourth prerequisites for admission). Therefore, we do not find the Stipulation ambiguous on this basis.

Second, the trial court may have agreed with Wroe's argument that the Stipulation was too vague to adequately inform him that the examiner could opine that Wroe was deceptive. Tr. p. 21-23. We cannot agree. To the contrary, the Stipulation contains several provisions stating that the purpose of the polygraph was to determine if he was being truthful or deceptive and that the examiner's opinion on that issue would be

10

admissible against him.  Tr. Ex. A p. 1-2, 4.  Furthermore, the Stipulation explicitly provides throughout that by signing it, Wroe was agreeing to its admissibility in court. Wroe even acknowledged "that the results of the polygraph examination would not be admissible but for this signed Stipulation and Agreement."  Id. at 4.

We also highlight, again, that Wroe is not arguing on appeal that the Stipulation is ambiguous, nor does he direct our attention to any specific parts thereof that he finds problematic.  Under these circumstances, we do not find that the Stipulation was invalid because of ambiguity.

### C.  Indiana Evidence Rule 704

Finally, the State observes that the trial court may have granted the motion to suppress based on Indiana Evidence Rule 704(b), which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This evidentiary rule, however, does not affect the validity of the Stipulation itself. Instead, the rule would potentially affect the Stipulation's admissibility.  But if the Stipulation is valid, then Wroe has plainly waived the argument.

The Stipulation states that Wroe "expressly waives any and all objections to such testimony . . . or admissibility of such testimony based upon . . . such rules of evidence as might otherwise govern."  Tr. Ex. A p. 2.  By knowingly and voluntarily signing the Stipulation, Wroe has waived this argument.  And in any event, the application of Evidence Rule 704 does not affect the validity of the Stipulation or whether this evidence

11

should be suppressed.  We also note, again, that Wroe does not argue that the trial court should be affirmed based on Rule 704.  Thus, we do not find the Stipulation invalid on this basis.

### D.  Unconscionability

The only argument that Wroe makes on appeal in favor of affirming the trial court relates to the nature of the bargain made between himself and the State.  Specifically, Wroe argues that the Stipulation was the product of misrepresentation by the State and that it was unconscionable.  See Kochersperger, 725 N.E.2d at 925 (holding that a contract is invalid if it is the product of misrepresentation); Justus v. Justus, 581 N.E.2d 1265, 1272 (Ind. Ct. App. 1991) (holding that a contract is invalid if it is unconscionable).

Wroe first maintains that the State induced Wroe to sign the Stipulation through misrepresentation.  Specifically, Wroe contends that the State led Wroe to believe he was receiving a benefit from the agreement, when in fact, he was not, because the State gave no consideration in exchange for Wroe's cooperation.  Wroe argues that the State's promise that it would drop the prosecution if Wroe passed the polygraph was illusory because even without Wroe's cooperation, the State was precluded from further prosecution based on a lack of other evidence.  While that is true, the State notes that the Stipulation provides not just that the State would drop the prosecution, but also that it would "cease to investigate Jacob A. Wroe as a suspect in this investigation . . . ."  Tr. Ex. A p. 4.  Absent Wroe's cooperation, the State could have continued its investigation

12

into him as a suspect by interviewing other witnesses and continuing to seek other corroborative evidence. Giving up the right to do so was genuine, non-illusory consideration. Therefore, we do not find that the Stipulation is invalid because of misrepresentation.

Next, Wroe contends, essentially, that the totality of the circumstances rendered the Stipulation an unconscionable contract. Wroe notes (1) that he has only an eighth grade education, (2) that he was without counsel, (3) that he waived multiple constitutional rights by signing the Stipulation, (4) that the Stipulation hampered his future attorney's ability to present a defense on his behalf, and (5) that by signing the Stipulation, Wroe agreed to allow inherently unreliable evidence to be admitted against him at his trial.

We share the concerns raised by Wroe. However, it is clear that our Supreme Court has found agreements such as the one herein to be valid, inasmuch as the Court has said that the only way in which polygraph examinations are ever admissible in a criminal case is when such an agreement is reached. E.g., Sanchez, 675 N.E.2d at 308. It is always the case that there will be unequal bargaining power between an individual and the State, it will frequently be the case that the individual has not had all of the educational opportunities afforded the attorneys and police officers he is dealing with, and it is necessarily the case that these stipulations involve the waiver of constitutional rights, the hindering of defense counsel at trial, and the agreement to allow unreliable evidence to be admitted at trial. Notwithstanding these concerns, our Supreme Court has

13

held that agreements such as these are valid absent other problems that have not been raised in this case. As a result, we are compelled to find that the Stipulation is not invalid based on unconscionability.

As a final aside, we observe that in reaching its decision to grant the motion to suppress, the trial court must have made both factual findings and legal conclusions. If we had factual findings before us to consider, we would have deferred to those findings. But with only a summary order to review, we have no way of knowing why the trial court ruled in the way that it did. Under these circumstances, we can only guess as to the trial court's reasoning and rely on the arguments made by the parties on appeal. We have been unable to find substantial evidence of probative value in the record supporting the trial court's order and find that its ruling was contrary to law.

Notwithstanding the language of the Stipulation, Sanchez is still the law of the land. Therefore, should the State decide to refile charges against Wroe, the trial court still retains the discretion afforded by Sanchez to consider the examiner's qualification and the testing herein. This opinion has focused solely on the first prong of the Sanchez test and should not be interpreted to relate to any of the other three prongs. We also note that in the end, it will be the jury's province to consider and weigh all evidence, including the polygraph examination results.

The judgment of the trial court is reversed.

KIRSCH, J., and ROBB, J., concur.

14